John F. Cavaciuti v. Secretary of Veterans Affairs, 2022-1531 Good morning and may it please the Court, Joseph Kolker on behalf of John F. Cavaciuti. This Court should reverse, as a matter of law, the determination by the Veterans Court that Mr. Cavaciuti is not a prevailing party. I'd like to focus on two reasons why this Court should reverse. First, Mr. Cavaciuti is a prevailing party because the uncontested facts of this case satisfy at least three factors that the Supreme Court in Buchanan identified as particularly relevant. The Secretary here admitted that he had made a clear and unmistakable error. The Secretary also acknowledged that he was correcting that error, as he was required to do, both of which show a lack of voluntariness in his actions. And third, the terms of the relief that Mr. Cavaciuti obtained were memorialized in the dismissal order. I will discuss each of those in greater detail. But the second reason that Mr. Cavaciuti is a prevailing party is that the Veterans Court's dismissal order materially changed the party's legal relationship going forward by locking the Secretary in to providing the relief that Mr. Cavaciuti had sought in the proceedings before that Court. I thought it was the settlement discussion that changed, that enabled him to get what he was looking for. Your Honor, there were settlement discussions. In this case, after some initial settlement discussions, the Secretary did not communicate further with Mr. Cavaciuti and then came back with a new decision by the regional office on two occasions, the second of which occurred after the settlement discussions, and then moved the Veterans Court to dismiss this case as moot. It was only, we contend, with the order of dismissal that the Secretary became bound not to renege on the litigation statements the Secretary made in seeking mootness dismissal that the April 2020 decision by the regional office had been fully overridden and was effectively clear and unmistakable error. Mr. Coulter, this is Joe Toronto. So, I think I understand your coherent legal argument for why legal relations were changed in the circumstances here with the at least double representation by the Secretary to the Veterans Court about correctness, suggesting requirements, which then led to a dismissal for mootness and that correctness representation logically may well have something to do with the reason there was no problem in meeting the fairly high standard for voluntary cessation. So, just on the substance, the theory, I think, I don't know, tracks and echoes certain considerations that are discussed in a canon, although I'm not quite sure they're discussed as considerations. But my question is this. Are there any judicial opinions from anywhere, this court, any court, that do rely even expressly on a legal representation by a defendant when dismissing for mootness to find that the plaintiff is a prevailing party? I don't remember seeing anything in your brief on that scenario, which doesn't feel to me like it ought to have occurred for the first time in the last 20 years in this case. It seems like it ought to have occurred in earlier cases and, therefore, that there ought to be some judicial authority addressing it from elsewhere. Your Honor, I have not found a case in which a court has ruled either way on the specific question that you're asking, which is whether the judicial estoppel effect of a mootness dismissal establishes prevailing party status. I have also not found a case in which this was rejected. I think that the binding authority that we are primarily relying on for this point is the Monsanto case, the decision from this court, already versus Nike for the Supreme Court, both of which, I think, make clear and have binding effect. Let me just try to be a little clearer. For purposes of this question, I think you have a good point that there is a judicial estoppel effect. What I'm trying to understand is whether that ought to be enough to come to a different conclusion from the conclusion that the Supreme Court set forth in Buchanan. Because there's an obvious, I think it's obvious anyway, to me, a worry that this rationale is one that could easily, very substantially, cut into the reach of Buchanan in a way that would suggest evasion. Thank you, Your Honor. I think that one of the things in this case that we have is not just the claim of judicial estoppel, but also the other Buchanan factors that we've identified. I don't really think that they're factors. It's a problem. Your Honor, if you look at Justice Scalia's concurrence in Buchanan, he actually said that admission of liability alone was the equivalent of a judgment on the merits. I think while that is not binding, it is persuasive in suggesting what the Supreme Court understood to be the sort of baseline in writing Buchanan. I think... I'm sorry. Do you have a specific page cited on the Scalia concurrence on that particular point? I did read it this morning, but I don't have that in mind. I will get that for Your Honor in just one moment. Can you use the word admission? I will read you the precise language, Your Honor. Apologies, Your Honor. This is at page 615 of the United States Reports. This little parenthetical? The sentence I'm looking at is, meant the party that wins the suit or obtains a finding or an admission of liability. Yes, if that's what you're referring to as the parenthetical. Yes, Your Honor. Yes. Okay. I think there are a number of other... So I think that the presence of those factors that we've identified is a limiting factor should the court be concerned by any sort of floodgates concerns in this case. A reversal here would not require the court to determine that judicial estoppel alone would lead to prevailing party status because these other factors are present here as well. I think there is also no reason for concern that future veterans would, for example, withhold consent to mootness dismissals in order to generate fee claims. I think for both practical and legal reasons. I think the practical reason is that typically if a veteran is being given the relief that they sought, there's just very little incentive to stick around and see what happens in the case, which could end up going a different way just for the sake of trying to preserve a fee claim. I think as a legal matter, I'm not sure that that scenario in the run of cases would meet the judicial estoppel test because here, we're actually relying on the delta between what the relief that was actually granted versus the secretary's representations to the veterans court regarding the fact that the April 2020 decision had been basically completely overridden, which is not something that you see on the face of the regional office's decisions, but is a litigation statement that the secretary made to the veterans court. That delta is the reason, is a big part of the reason that we would be prejudiced by any reversal by the secretary in the future because... Can you make that concrete for me? Yes, Your Honor. So, for example, the December 2020 decision does not say that the April 2020 decision committed clear and unmistakable error. I don't view that as concrete. I want to understand what concrete consequence follows from the difference from what you call the delta. You just said something about, okay, certain words weren't in the original, but until I know what those words mean in terms of relief granted or stability of the relief or something, I still don't understand what effect there is. The December 2020 and January 2021 decisions by the regional office appear to have the effect of reversing the April 2020 decision. They nowhere say that that decision no longer has effect going forward. And so I think the pretty concrete concern that Mr. Kabashudi has in this case, given the sequence of events, is that without any binding representation that the April 2020 decision has been overturned or committed clear and unmistakable error. That decision is still on the books and it would... I think I'm not making myself clear. Your last five sentences are still only about words and not about concrete. You get a certain amount of money for a certain period of time or not. They're not yet concrete in my mind. I could be wrong about that, but I don't understand that you have yet explained why it matters whether the April decision is, quote unquote, on the books. I think that one way in which the question of whether the April 2020 decision is on the books affects a, for example, financial interest, is Mr. Kabashudi's ongoing appeal of the determination of TDIU mootness for the period of 2015 to 2019. And one of the concerns that Mr. Kabashudi identified in opposing the mootness dismissal requested by the Secretary was the concern that adjudicators within the agency making that determination would look at the April 2020 decision and accord it any weight whatsoever. And so that is the closest that I have for Your Honor's question regarding tying this specifically to a financial interest. Okay, thank you. Counselor, you're into your rebuttal time. You can save it or continue. Thank you, Your Honor. We've asked the Court to reverse, and with that, I would ask to reserve the remainder of my time. Thank you. Mr. Hillman. Good morning, Your Honor, and may it please the Court. This Court should affirm the Veterans Court's denial of Mr. Kabashudi's fee petition because he cannot satisfy the prevailing party standard here. As the Supreme Court explained in Buchanan, a defendant's voluntary change in conduct, although perhaps accomplishing what plaintiffs sought to achieve with the lawsuit, lacks the necessary judicial imprimatur on the change. And that is entirely the case here. The Secretary took voluntary action to grant Mr. Kabashudi the entirety of the relief that Mr. Kabashudi sought. I think, as you know, the entire point on the other side is that there's more than voluntary action here. There were two statements that were confessions of legal requirement that is, I think, the entire basis for the assertion on the other side that this is not simply voluntary action. Well, I think, Judge Stronto, their assertion that it's not simply voluntary action hinges on this judicial estoppel argument, which essentially seeks to reanimate the catalyst theory that the Supreme Court rejected in Buchanan. So they say that the Secretary made certain representations and those are different somehow than the actions that the Secretary took. But the Veterans Court here dismissed, for lack of case or controversy, because of the Secretary's actions. The action was to grant Mr. Kabashudi the relief that he sought and this is embodied in a board opinion. In the ordinary course, and I think Buchanan is clear about this, voluntary cessation presents a particular hurdle for a dismissal from mootness. And I guess I took the essence of the position on the other side to be that the Veterans Court necessarily found that hurdle surmounted and why might it have found that? And that's because it's not just that the defendant or the government said, we're going to give you what you want, but because it said we are legally required to do that. And that would have forward-looking effects of making it distinctly unlikely that the conduct will resume. My understanding is that is their judicial estoppel argument. And the problem with that argument is that it lacks the judicially sanctioned change in the judicial imprimatur, as Buchanan said. So the Secretary said that the April 2020 RO decision was erroneous. The agency then came out with two additional RO decisions that granted Mr. Kabashudi relief. What the Secretary said in that is not sufficient to confer prevailing party status. That doesn't have any sort of judicially sanctioned change in the party's legal relationship. And I think they're trying to bootstrap the prevailing party status through the judicial estoppel argument. But the judicial estoppel argument, at this point, fails for a number of reasons. Judicial estoppel may apply in the future if the Secretary were to assert a clearly inconsistent position and try to somehow benefit from that position. But that's purely hypothetical. Here, in fact, Mr. Kabashudi has already been granted and paid the benefit. So there's this argument on the other side that the Secretary is precluded from reneging on his position. Well, the award has already been effectuated. So there is no opportunity for the Secretary now to renege on that. So it's not merely hypothetical to say that the Secretary at some future point has stopped from changing his position. It's also essentially an impossibility. Just as a very practical question, can't the Secretary claw back improperly paid benefits? There is a mechanism for the Secretary to do that, although that mechanism entails notice to the veteran and additional due process concerns of that. If the Secretary were to try that and the veteran opposed that and got a judicial decision saying the Secretary can't do that, he would probably qualify for prevailing party status in that case. But that hasn't happened. And to say that he's somehow a prevailing party just because of potential future occurrences would create an exception to Buckhannon that essentially swallows the rule. Because in any of these mutinous dismissals for lack of case or controversy because of voluntary action on the part of the defendant, the plaintiff can always come in and say, well, the defendant has now judicially stopped from changing their position, and therefore, because the court dismissed for mootness, there's a legal change in the party's relationship and we qualify for prevailing party status. It would reanimate the catalyst theory in Buckhannon that the Supreme Court squarely rejected. Suppose that he had asked the Veterans Court, instead of dismissing it as moot, which I guess he did, to order the government to comply with its representations at the time, and he had said, please do this so that I can get attorney's fees, and the court had agreed. Would that be sufficient to get him attorney's fees? There was an actual order. The court agreed and issued an actual order compelling the government. If the court issued an actual order compelling the secretary to comply with the court's ruling, that's a judicially sanctioned change in the party's legal relationship that would qualify as prevailing party status, yes. But we don't have that here. What Appellant is trying to create is, if the secretary, a day after the mandamus petition is filed, took voluntary action and corrected the mistake that somehow grants Appellant prevailing party status, that, as I just said, undercuts Buckhannon. And it creates disincentives for the agencies to correct their own errors, which they do not just in veterans cases, but BIT protest cases, they take corrective action all the time. And that's the sort of conduct that should be encouraged for the secretary or for the agency to recognize that there's been an error, correct that error, and grant the entirety of the relief here. We're not talking about settlement, where some portion of the relief was granted. Here, the secretary granted the entirety of the relief. And I just want to touch on one point about... It seems a little bit unfair that there shouldn't be any opportunity to collect attorney's fees when there's a blatant disregard for an order, and the veteran has to incur legal fees to correct that. Well, the secretary recognized the error and corrected that error. And that was the same issue in Buckhannon, Judge Dyke. The Supreme Court said that, yes, sometimes the litigation spurs the defendant to take action and grant the relief that the petitioner seeks, but that catalyst theory is not a basis. And there was a split of opinion before that. Some of the circuits had granted prevailing party status on the catalyst theory, and the Supreme Court in Buckhannon, again, said that, no, that's not a sufficient basis. This case is no different. Can you address the sentence in the Scalia concurrence that says it is traditionally, to my knowledge, prior to enactment of the first statute, that you're invariably met, the if here being the phrase prevailing party, the party that wins the suit or obtains a finding, parenthesis, or an admission, closed parenthesis, of liability. Is that incorrect? Is it contradicted by the majority, the court's opinion in Buckhannon? And would that little parenthetical actually apply here? So there's two questions there, Judge Toronto. First, I don't think that this parenthetical about an admission of liability contradicts the majority in Buckhannon. Obtaining a finding of liability, I think, I'm not sure what Justice Scalia, I believe Justice Scalia was referring to as a parenthetical or admission of liability, but it's certainly not a, I think it had to be something more than just a statement by a defendant that there's an error and they're correcting that error. It could be. So you think it refers to somehow a judicially recorded or approved admission? Consent decree. Essentially a consent decree, yes. Where the court retains jurisdiction, the court administers a consent decree. And again, the crux of the analysis is whether there's a judicially sanctioned change, judicial alteration in the party's relationship. There can be many alterations in the party's relationships, but not all of them are judicially sanctioned. And Buckhannon made that line clear, that you need that judicial imprimatur. There's a second part to your question, Judge Toronto, as well. Okay, I thought you actually answered me in full. Okay. It's not in my mind at the moment. So just to address one final point with respect to the settlement negotiations, the Veterans Court made a factual finding that there's nothing to suggest that the Secretary acted inappropriately here. That's not a finding that this court can review within its jurisdiction because that was a factual determination. With that, if there are no further questions, we respectfully request that the Veterans Court's decision be affirmed. Thank you, Counselor. Counselor has some rebuttal time. Thank you, Your Honor. If I could just make a few points very briefly. I would add that, in addition to Justice Scalia's concurrence, there's a very similar rule established in this court's line of cases involving remands to administrative agencies. Davis v. Nicholson, 475 F. 1360, is an example of this, where this court held that remands based on our recognition of agency error from the record do confer prevailing party status. The same result follows if the Veterans Court finds administrative error or if the Secretary concedes it. I think that's another indication that Justice Scalia's concurrence is legally supported beyond the concurrence itself. But the concession leads to a judicial action there, which is a remand. Your Honor, I'm not sure that there's a distinction between remand versus dismissal for mootness in this case. Well, I mean, to be clear, this is why we have not primarily relied on these line of cases. They are not apposite for the reason that you say. I just meant that the... I think that the reasoning is persuasive, and here we have a judicial action in the form of the dismissal order. The Secretary has argued that our... the result that we're seeking would swallow the rule. I think, in addition to the reasons that I explained before, that I don't think that's so, I would also point the court to New Hampshire v. Maine. At 755-56, where the Supreme Court explains a variety of limitations on the use of judicial estoppel against government entities. You can't estop the government to compromise a governmental interest in enforcing the law. You can't estop the government where the shift in the position is a result of a change in public policy, nor where the shift in the government's position is a result of change in facts on the ground that were essential to the prior judgment. I think these are all important limiting factors that would not make this a typical effect in the run of cases. The Secretary also argued that judicial estoppel may only apply at some point in the future and suggested that it would not apply prospectively, but that argument is precluded by the Already v. Nike case, as well as this Court's decision in Monsanto. The last point I just want to make very briefly is that the Secretary has argued that one of the problems with our judicial estoppel argument is that it lacks any sort of judicial sanction, but we think that judicial estoppel definitionally has judicial imprimatur. That is the entire point of judicial estoppel, and it is something that relies on the Court's authority to have a preclusive effect going forward. And finally, the Secretary said that our lack of voluntariness argument hinges on judicial estoppel, but I think that our lack of voluntariness argument comes up in two ways in this case, the first of which is the Secretary's admission that he was correcting an error that he was required to do, and the second of which is that with the effect of judicial estoppel going forward, there is now a lack of voluntariness. So I would submit that there are two different reasons that the actions and representations here were not purely voluntary. And if there are no further questions, we would ask the Court to reverse. Thank you, Mr. Corker. The case is submitted.